<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> STEVEN KADONSKY | Criminal No. 97-154 (MAS) <br><br> **MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court on Defendant Steven Kadonsky's ("Kadonsky" or "Defendant") Motion for Early Termination of Supervised Release. (ECF No. 99.) The United States of America (the "Government") opposed (ECF No. 101), and Kadonsky replied (ECF No. 102). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1, which is applicable to criminal cases under Local Criminal Rule 1.1. For the reasons set forth below, the Court grants Kadonsky's Motion.

**I.    BACKGROUND**

On April 26, 1999, Kadonsky—who had been in the custody of the State of New Jersey for narcotics offenses since July 1, 1994—pled guilty to a single count of structuring a transaction to evade reporting requirements under 31 U.S.C. § 5324(a)(3). (Def.'s Original Motion *25, ECF No. 82-2[1]; Gov't's Opp'n Br. 1, ECF No. 95.) The Court sentenced Kadonsky to twenty-four months' imprisonment and ordered Kadonsky to pay a $40,000 fine.[2] (Def.'s Original Motion *26, *29.) The Court ordered Kadonsky's federal sentence to run concurrently with his ongoing state sentence

---

[1] Pages preceded by asterisks indicate the pagination in the CM/ECF header.

[2] The fine was vacated on appeal. *See United States v. Kadonsky*, 242 F.3d 516 (3d Cir. 2001).

for drug charges, which included a mandatory minimum of 25 years. (Def.'s Original Motion *26; Gov't's Supp. Opp'n Br. 3, ECF 101.) As relevant here, the Court also sentenced Kadonsky to three years of supervised release. (Def.'s Original Motion *27.) Kadonsky's federal prison sentence ended in 2001, but he remained in state custody until June 25, 2020—and it was only then, almost two decades after the conclusion of his federal prison sentence, that Kadonsky began serving his three-year term of supervised release on the federal conviction. (Def.'s Moving Br. 2, ECF No. 99.) Kadonsky is approximately eighteen months into his three-year term of supervised release. (*Id.* at 1, 4.)

On January 3, 2021, Kadonsky filed a pro se motion for reduction of supervised release under Section 3632(d)(4)(A) of the First Step Act ("FSA") based on credits he was allegedly entitled to for anti-recidivism programs he participated in while incarcerated.[3] (Def.'s Original Motion *12.) On January 31, 2021, Kadonsky filed a motion to appoint counsel (ECF No. 86), following which an Assistant Federal Public Defender entered an appearance (ECF No. 88), and filed a supplemental Motion for Reduction of Sentence (ECF No. 89). On September 2, 2021, Defendant, through counsel, filed a Motion for Early Termination of Supervised Release. (ECF No. 99.) The Government filed opposition to Kadonsky's Motions (ECF Nos. 95, 96, 101), and Kadonsky filed replies (ECF Nos. 97, 102).

## II.  LEGAL STANDARD

The Court starts with Defendant's most recent submissions and first considers his Motion for Early Termination of Supervised Release under 18 U.S.C. § 3583(e). In relevant part, the statute reads as follows:

> The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) –

---

[3] Kadonsky argued that his supervised release period should be reduced by "2 years, 8 months, 24 days." (Def.'s Original Motion *11.)

> (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

18 U.S.C. § 3583(e)(1). As is routine in dealing with the modification of a defendant's sentence, the statute directs the Court to consider the 18 U.S.C. § 3553(a) factors.[4] In deciding whether to terminate supervision early, the Court has broad discretion under § 3583(e). *See United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020) ("The expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination." (quoting *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014))).

After considering the § 3553(a) factors and present circumstances of a defendant, district courts may grant early termination only if satisfied that it is "warranted by the defendant's conduct and is in the interest of justice." *Melvin*, 978 F.3d at 52. District courts need not make express findings for each § 3553(a) factor; "rather, 'a statement that [the district court] has considered the statutory factors is sufficient.'" *Id.* at 53 (quoting *United States v. Gammarano*, 321 F.3d 311, 315-16 (2d Cir. 2003)) (alteration in original). Further, as the Third Circuit clarified, the Court

---

[4] The § 3553(a) sentencing factors are (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences and sentencing ranges established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a); *see also United States v. Davies*, 746 F. App'x 86, 88-89 (3d Cir. 2018).

need not find an exceptional or extraordinary circumstance to grant early termination. *See id.* Nor is it a requirement that the defendant present a new or unforeseen occurrence that arose since the original sentencing. *Id.* "In other words, extraordinary circumstances may be sufficient to justify early termination of a term of supervised release, but they are not *necessary* for such termination." *Id.* (emphasis in original).

Generally, however, because the imposition of an original sentence should be "sufficient, but not greater than necessary," 18 U.S.C. § 3553(a), it follows that early termination of supervision should be prompted by a "new or unforeseen circumstance[.]" *Davies*, 746 F. App'x at 89. Conversely, a defendant's routine compliance with the terms of supervision, although "commendable," "is precisely what is expected of [a defendant]." *United States v. Stiso*, No. 14-484, 2021 WL 1291648, at *3 (D.N.J. Apr. 6, 2021).

### III. DISCUSSION

#### A. The New Life Justice Initiative

Kadonsky claims that he began working on the New Life Justice Initiative ("NLJI") "years before the organization structure was formed." (Def.'s Original Motion *15 n.17.) According to Kadonsky, the organization arose from twenty years of informal conversations "in the prison yard with prisoners from the inner cities, all ethnicities, all affiliations, and all levels of those affiliations" about their paths to prison and what can be done to help prevent youth from following in their footsteps. (*Id.*) Since his release from prison on June 25, 2020, Kadonsky has formally incorporated the NLJI in the State of New Jersey, and through the NLJI has developed a plan to set up a call center, which would employ up to 300 newly released prisoners. (*Id.* at *1, *10.) Kadonsky's current work with the NLJI gives rise to the predicament that precipitated the instant motion: as an anti-recidivism organization, the NLJI's clientele is largely made up of ex-felons,

but the terms of Kadonsky's federal supervised release do not allow him to associate with anyone with a criminal record. (*Id.* at *2.)

### B. The Court Grants Kadonsky's Motion under 18 U.S.C. § 3583(e)

The Court has considered the statutory factors and the unique facts at issue in this case and finds that the termination of Kadonsky's federal term of supervised release is warranted.

Kadonsky points to the United States Sentencing Commission Guidelines, which "encourage[the Court] to exercise [its] authority to terminate supervised release . . . in appropriate cases," to argue that early termination for low-risk offenders is supportable and in the interests of public policy. (Def.'s Moving Br. 4-5 (citing U.S.S.G. § 5D1.2(a), comment n.5).) Kadonsky further argues that "his conduct, rehabilitation, and redemption, is extensive, genuine, and exceptional by any gauge." (Def.'s Reply Br. 1, ECF No. 102.) As to the "need to afford adequate deterrence" and to "protect the public," Kadonsky points to his now longstanding commitment to a "constructive, responsible and law-abiding life" and to his demonstrated commitment to "provide direction, training, and guidance to former offenders." (Def.'s Moving Br. 6.) If the goal of supervised release is to "facilitate[e] the reintegration of the defendant into the community," that goal, Kadonsky argues, has already been met: Kadonsky is "fully integrated back into society, much to the credit of his own self-determination, hard work, and dedication." (*Id.* (quoting *United States v. Vallejo*, 69 F.3d 992, 994 (9th Cir. 1995)).)

The Government argues that the serious nature of Kadonsky's criminal history—he has been convicted on multiple narcotics offenses, including one for which he served a mandatory-minimum sentence of 25 years—suggests that public safety is still a concern and his term of supervised release remains necessary. (Gov't's Am. Opp'n 7-8, ECF No. 96.) The Government further argues that Kadonsky's compliance with the standard provisions of a term of supervised release, including the condition that he not associate with any person convicted of a felony, remains

now, as at the time of sentencing, in the interests of justice. (*Id.* at 8.) The Government also contends that Kadonsky has failed to present any "new or unforeseen circumstance" that would justify early termination of supervised release. (*Id.*)

"[The Court] review[s] the reasonableness of a supervised release term against the § 3553(a) factors, recognizing that the primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than to punish them." *United States v. Murray*, 692 F.3d 273, 280 (3d Cir. 2012) (quoting *United States v. Albertson*, 645 F.3d 191, 197 (3d Cir. 2011)). Here, having weighed the § 3553(a) factors in light of the unique set of facts presented by this case, the Court finds that the interests of justice weigh in favor of granting Defendant early termination, and the fundamental purpose of "facilitat[ing] the integration of offenders back into the community" is best served by an outcome which allows Kadonsky to continue his anti-recidivism work.

Further considering the § 3553(a) factors, the Court finds that the nature and circumstances of the offense—the sole federal charge on which Kadonsky was convicted was a single count of structuring a transaction to evade reporting requirements—do not weigh in favor of a continued term of federal supervision. With respect to the history and characteristics of the defendant, Kadonsky presents persuasive evidence, spanning several years, of his commitment to his own and his community's betterment, including establishing the NLJI since his release from prison, which weighs in favor of modification. In addition, nothing presented by the parties here persuades the Court that a continued term of federal supervision is necessary to deter Kadonsky from further criminal conduct or to deter criminal conduct generally, or to protect the public from further crimes from Kadonsky.

The Court notes, moreover, that the present facts are unique. Kadonsky completed his 24-month federal sentence in 2001, but then remained in prison for nearly two full decades before

re-emerging, once again under federal jurisdiction, to serve his mandatory three-year term of supervised release. In the interim, the facts demonstrate that Kadonsky took concrete and measurable steps, both in and out of prison, to reintegrate himself with his community. This includes incorporating the NLJI with the State of New Jersey to assist other former prisoners reintegrate into society. Here, the policy goal "to facilitate the integration of offenders back into the community rather than to punish them" would be frustrated by a continuation of Kadonsky's term of supervision. *See Murray*, 692 F.3d at 280.

Kadonsky reminds the Court that, regardless of the outcome of this motion, he may remain under the supervision of the State of New Jersey after the Court's ruling. (Def.'s Moving Br. 5.) This also weighs in favor of a termination of his federal term of supervised release. Finally, the Court turns to the reasoning in *Melvin*, where the Third Circuit held that no finding of an "exceptional, extraordinary, new, or unforeseen circumstance" is *necessary* to warrant the termination of a term of supervised release, although such a circumstance may be *sufficient* to warrant such a termination. *Melvin*, 978 F.3d at 53. While the circumstances presented by this case may not technically be "unforeseen," the two-decade interval between the completion of Kadonsky's federal sentence and the beginning of his reintegrative term of federal supervision is both exceptional and extraordinary. Further, Kadonsky provides a concrete reason that early termination would be beneficial for him and others—his current terms of supervision limit his ability to help formerly incarcerated persons through the NLJI. This exceptional circumstance, when balanced with the other factors in §§ 3583(3) and 3553(a), leads the Court to conclude that termination of Kadonsky's federal term of supervised release is warranted by the conduct of Defendant and is in the interests of justice.

## IV. CONCLUSION

Based on the Court's broad discretion, and for the reasons set forth above, Defendant's Motion for Early Termination of Supervised Release is granted. An appropriate Order will follow.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**